**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

──────────────────────────────

**NATHAN P.,**

                              **Plaintiff,**                    **19-CV-954Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

──────────────────────────────

## DECISION AND ORDER

          As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #16.

## BACKGROUND

          Plaintiff applied for supplemental security income ("SSI"), with the Social

Security Administration ("SSA"), on January 25, 2016, alleging disability beginning

February 25, 2015, at the age of 18, due to Attention-Deficit/Hyperactivity Disorder

("ADHD"), learning disability, Oppositional Defiant Disorder ("ODD"), Bipolar Disorder,

anger, frustration and inability to handle more than one task at a time. Dkt. #6, pp.66-

67.

On May 1, 2018, plaintiff and his mother appeared with counsel and testified, along with an impartial vocational expert ("VE"), Jay Steinbrenner, at an administrative hearing before Administrative Law Judge ("ALJ"), Bryce Baird. Dkt. #6, pp.19-53. Plaintiff testified that he was 21 years old, does not have a driver's license and lives with his mother and sister. Dkt. #6, pp.26-27. Plaintiff went to PetSmart for a job, but was unable to complete the paperwork, did not want to keep asking for help and never went back. Dkt. #6, p.28. Plaintiff's mother explained that it was too overwhelming for him because even though he thought it was a simple job stocking shelves, he couldn't read the paperwork or ask for help and became angry. Dkt. #6, p.33. Plaintiff testified that he often forgot things his mother asked him to do and would get sidetracked when he did attempt to do things. Dkt. #6, p.29. He has trouble maintaining a schedule and becomes claustrophobic around too many people. Dkt. #6, pp.32-33.

Plaintiff's mother testified that plaintiff "flips out" under stress or when he doesn't get what he wants. Dkt. #6, pp.41-42. She also testified that plaintiff's hygiene was terrible - he spits on the floor; pees on the toilet seat, on the bathroom floor and in bottles, which he leaves around the house; and uses diaper wipes instead of toilet paper, which he allows to overflow the bathroom trash can. Dkt. #6, p.35. She testified that he had defecated on all the chairs and ripped them with a knife and broke furniture and dishes. Dkt. #6, pp.42-43. When asked about these issues, plaintiff explained that he forgets to clean up after himself and needs to work on fixing bad habits. Dkt. #6, pp.43-44.

When asked to assume an individual with plaintiff's age, education and past work experience with no physical, exertional, postural or manipulative limitations who was limited to understanding simple information and performing simple, routine tasks that could be learned after a short demonstration or within 30 days and would not be required to independently develop work strategies or identify workplace needs and would have no more than occasional interaction with coworkers in a job that would not require teamwork and would be doing the same tasks every day with little variation in location, hours or tasks, the VE testified that plaintiff could work as a warehouse worker and packaging machine tender, each of which were unskilled, medium exertion positions, or as a cleaner, which is an unskilled, light exertion position. Dkt. #6, pp.47-49.

When asked to assume the individual would be off task 5% of the work day in addition to regularly scheduled breaks, the VE found such a minimal limitation would not eliminate performance of the jobs identified. Dkt. #6, pp.49-50. In contrast, the VE testified that being off task 20% of the day in addition to regularly scheduled breaks would lead to termination. Dkt. #6, pp.50-51. When asked to assume that the individual would require more than occasional supervision, the VE testified that the level of supervision would be expected to fade over time with unskilled, routine work and that an individual who needed that level of supervision would be better suited for a supportive or sheltered work environment. Dkt. #6, p.50. When asked to assume an individual who responded poorly or inappropriately to criticism from supervisors or coworkers on a weekly basis, the VE testified that such an individual would be terminated after more than two or three instances of such behavior. Dkt. #6, p.50.

The ALJ rendered a decision that plaintiff was not disabled on August 23, 2018. Dkt. #6, pp.78-92. The Appeals Council granted review to consider additional evidence submitted by plaintiff, but denied plaintiff's claim on May 21, 2019. Dkt. #6, pp.8-11. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 22, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant seeking SSI must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

        In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of January 25, 2016; (2) plaintiff's ADHD, ODD, bipolar disorder and asthma constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform

work at all levels of exertion with the following limitations: communicating and understanding simple information, performing simple routine tasks that can be learned after a short demonstration or within 30 days and which require performance of the same tasks every day with little variation in location, hours or tasks and will allow plaintiff to be off task 5% of the workday in addition to regularly scheduled breaks with no more than superficial interaction with the public and occasional interaction with coworkers, no work requiring teamwork or that plaintiff drive a vehicle or travel to unfamiliar places or independently develop work strategies or identify workplace needs, and no exposure to pulmonary irritants such as odors, fumes, dust, gasses or poor ventilation; and (5) plaintiff has no past relevant work, but was capable of working as a warehouse worker or packaging machine tender, each of which were unskilled, medium exertion positions, or as a housekeeper/cleaner, which was an unskilled, light exertion position and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.83-92.

Plaintiff argues that although the ALJ credited opinions from individuals who stated that plaintiff would have difficulty interacting with supervisors and would need additional supervision, the ALJ's RFC does not address plaintiff's capacity to interact with supervisors or sustain a routine without special supervision. Dkt. #10-1, pp.14-17.

The Commissioner responds that the ALJ and Appeals Council properly determined that plaintiff could perform simple work that did not require more than

superficial interaction with the public or more than occasional interaction with co-workers. Dkt. #14-1, p.28. The Commissioner disputes plaintiff's interpretation of the opinions of Dr. Bowman and Dr. Harding, arguing that both agreed that plaintiff would have no significant limitation in his ability to perform a job that only required him to understand, remember and carry out simple tasks and instructions. Dkt. #14-1, p.28.

Plaintiff replies that the Commissioner may not substitute his own rationale where the ALJ failed to provide one. Dkt. #15, p.2. Plaintiff notes that the VE testified that plaintiff would be unable to perform any of the jobs identified if plaintiff required more than occasional supervision or responded poorly or inappropriately to criticism from his supervisor. Dkt. #15, p.3.

Susan Santarpia, Ph.D., conducted a psychiatric evaluation of plaintiff on February 5, 2015. Dkt. #6, p.391. Plaintiff reported extreme irritability and ODD-like behaviors which were controlled and stabilized with current medication, as well as concentration difficulties controlled with medication. Dkt. #6, p.391. Plaintiff was able to perform simple one-step, as well as two-step mathematical calculations and serial subtraction and could recall 3 of 3 objects immediately and after delay and could recite 6 digits forward and 3 in reverse order. Dkt. #6, pp.392-393. Plaintiff reported that he was able to dress, bathe and groom himself; cook; clean; wash laundry; shop; and manage his own money. Dkt. #6, p.393. Dr. Santarpia completed a medical source statement indicating that plaintiff

> presents as able to follow and understand simple directions and instructions, perform simple tasks independently,

> maintain attention and concentration, maintain a regular
> schedule, learn new tasks, perform complex tasks
> independently, make appropriate decisions, relate
> adequately with others, and appropriately deal with stress
> within normal limits.

Dkt. #6, p.393. She did not believe that plaintiff's psychiatric problems "appear to be

significant enough to interfere with the claimant's ability to function on a daily basis."

Dkt. #6, p.393. The ALJ afforded Dr. Santarpia's opinion significant weight because it

was based on her knowledge of the Social Security disability program and consistent

with the mental status examinations and plaintiff's subjective complaints and activities.

Dkt. #6, p.90.


On June 2, 2015, psychological consultant T. Harding completed a

Psychiatric Review Technique Assessment for redetermination of plaintiff's SSI,

determining that plaintiff's ADHD and Bipolar Disorder vs. ODD would cause mild

restrictions in plaintiff's activities of daily living; moderate difficulties in maintaining

social functioning; and moderate difficulties in maintaining concentration, persistence or

pace. Dkt. #6, pp.401-417. More specifically, Dr. Harding determined that plaintiff would

be moderately limited in his ability to:

- understand and remember detailed instructions;

- carry out detailed instructions;

- sustain an ordinary routine without special supervision;

- work in coordination with or proximity to others without
  being distracted by them;

- interact appropriately with the general public;

- accept instructions and respond appropriately to criticism
  from supervisors; and

• set realistic goals or make plans independently of others.

Dkt. #6, pp.415-416. The ALJ afforded Dr. Harding's opinion significant weight because it was based on his knowledge of the Social Security disability program and consistent with the mental status examinations, plaintiff's subjective complaints and activities and the opinions of the consultative examiners, Dr. Santapria and Dr. Fabiano. Dkt. #6, p.90.

Dr. Fabiano conducted a psychiatric evaluation of plaintiff on April 14, 2016. Dkt. #6, p.421. Plaintiff described himself as having "bipolar," which his mother described as plaintiff acting out of control and breaking things if he doesn't get his own way. Dkt. #6, p.422. Dr. Fabiano opined that "it appears that these behaviors are more consistent with an oppositional defiant disorder or intermittent explosive disorder rather than bipolar disorder, especially since the claimant denies any symptoms of depressed mood as well." Dkt. #6, p.422. Plaintiff was able to perform counting tasks, simple calculation and serial 3s and could recall 2 of 3 objects immediately and 3 of 3 objects after 5 minutes and could remember 5 digits in a forward fashion and 3 digits in a backward fashion. Dkt. #6, p.423. Plaintiff reported that he could dress, bathe and groom himself, cook and prepare food, and clean. Dkt. #6, p.423. Dr. Fabiano completed a medical source statement indicating that plaintiff

> does not appear to have any evidence of limitation in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, and make appropriate decisions. He appears to have moderate limitations in his ability to maintain attention and concentration, perform complex tasks independently, relate adequately with others, and appropriately deal with stress.

Dkt. #6, p.424. The ALJ afforded Dr. Fabiano's opinion significant weight because it was based on his knowledge of the Social Security disability program and consistent with the mental status examinations and plaintiff's subjective complaints and activities. Dkt. #6, p.90.

On April 18, 2016, Marvella Bowman, Ph.D., completed a Psychiatric Review Technique Assessment for plaintiff's adult SSI application and determined that plaintiff's ADD and ODD would cause mild restrictions in plaintiff's activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. Dkt. #6, pp.70-71. More specifically, Dr. Bowman determined that plaintiff would be moderately limited in his ability to:

- understand and remember detailed instructions;

- carry out detailed instructions;

- sustain an ordinary routine without special supervision;

- work in coordination with or proximity to others without being distracted by them;

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- interact appropriately with the general public;

- accept instructions and respond appropriately to criticism from supervisors;

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

- respond appropriately to changes in the work setting; and

> • be aware of normal hazards and take appropriate
>   precautions.

Dkt. #6, pp.72-74. Dr. Bowman opined that plaintiff would be able to understand and

remember simple instructions and procedures; sustain adequate concentration to

complete simple tasks independently on a sustained basis; interact in a socially

appropriate manner; cope with basic changes; and make routine decisions. Dkt. #6,

pp.74-75. The ALJ afforded Dr. Bowman's opinion significant weight because it was

based on her knowledge of the Social Security disability program and consistent with

the mental status examinations, plaintiff's subjective complaints and activities and the

opinions of the consultative examiners, Dr. Santapria and Dr. Fabiano. Dkt. #6, pp.90-

91.


"The basic mental demands of competitive, remunerative, unskilled work

include the abilities (on a sustained basis) to understand, carry out, and remember

simple instructions; to respond appropriately to supervision, coworkers, and ususal work

situations; and to deal with changes in a routine work setting." SSR 85-15 (1985).

"A substantial loss of ability to meet any of these basic work-related activities would

severely limit the occupational base" and "justify a finding of disability." SSR 85-15.

However, moderate limitations in work related functioning do not significantly limit a

plaintiff's ability to perform unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.

2010); *Martinez v. Comm'r of Soc. Sec'y*, 3:16-CV-908, 2017 WL 2633532, at *7

(N.D.N.Y. June 15, 2017) (collecting cases). An ALJ need not call out every moderate

limitation by name, provided that the RFC appropriately reflects such limitations.

*Gibbons Thornton v. Colvin*, 2016 WL 611041, at *4 (W.D.N.Y. Feb. 16, 2016).

More specifically, a moderate limitation in a plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors is consistent with an RFC limiting plaintiff to unskilled work. *Poles v. Berryhill,* 17-CV-6189, 2018 WL 1471884, at *4 (W.D.N.Y. March 26, 2018) (ALJ's failure to expressly incorporate moderate limitation in ability to interact appropriately with supervisors into RFC finding was harmless error where VE testified that such a limitation would not impact an individual's ability to perform unskilled work); *Washburn v. Colvin*, 286 F. Supp.3d 561, 565-566 (W.D.N.Y. 2017)(failure to incorporate moderate limitation in ability to accept instruction and respond appropriately to criticism from supervisors harmless error where RFC limited plaintiff to unskilled work); *Call v. Comm'r of Soc. Sec'y*, 16-CV-1003, 2017 WL 2126809, at * N.D.N.Y. May 16, 2017) (moderate limitation in ability to interact appropriately with supervisors does not preclude the ability to perform unskilled work).

Moreover, such a moderate limitation can be accommodated by a restriction to occasional interaction with supervisors. *See Gomez v. Comm'r of Soc. Sec'y,* 18-CV-96, 2020 WL 1322565, at *3 (W.D.N.Y. March 20, 2020) (ALJ suitably translated moderate limitation in ability to interact appropriately with supervisors by limiting plaintiff to occasional interaction with supervisors); *Reilly v. Colvin*, 13-CV-785, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) (restriction to occasional contact sufficient to account for moderate limitations). In *Whitehorne v. Comm'issioner of Social Security*, for example, the district court determined that because the cleaner position identified by the VE in this matter required no more than occasional interaction with supervisors,  any error in failing to include a limitation on interaction with supervisors

based upon opinion evidence that plaintiff would be moderately limited in interacting with others was harmless. 19-CV-5077025, at * 4 (W.D.N.Y. Aug. 27, 2020). Thus, the ALJ's failure to specifically incorporate a moderate limitation in plaintiff's capacity to interact with a supervisor or sustain a routine without special supervision into plaintiff's RFC is harmless.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
**March 25, 2020**

**  s/ H. Kenneth Schroeder, Jr.  **
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**